WOODS *v.* PANKEY.

4-8655                                      215 S. W. 2d 292

Opinion delivered December 6, 1948.

*John S. Mosby,* for appellant.

*Bön McCourtney* and *Claude B. Brinton,* for appellee.

SMITH, J. Appellee rented a portion of his farm, comprising something less than forty acres, for the year 1945, to appellant Woods, for the agreed rental of one-fourth of the cotton and one-third of the corn grown on the land that year. The rental contract was entered into May 8, 1945. Woods required assistance to make the crop, and appellee sold him certain quantities of corn, hay and cottonseed to plant. Woods required an additional advance of $400 in money, which appellee was either unable or unwilling to make. Woods accompanied by appellee applied for a cash loan to a local bank, which the bank declined to make. They then applied to Stuckey Bros., merchants in Lepanto, for the loan, which Stuckey Bros. agreed to make, provided appellee would waive his lien on the crops. This appellee refused to do, and the loan was not made. Appellee and Woods then applied to D. F. Portis, doing business as Portis Mercantile Company, for the $400 loan, which Portis agreed to make, and which he subsequently made, and the decision of this case turns upon the question of fact as to the conditions under which Portis agreed to make and did make the loan.

Portis does not claim that appellee agreed to waive his lien as a landlord, but he testified that it was agreed that he should take, and that he was given a chattel mortgage on Woods' crop, team and farming implements, and that it was understood that this mortgage should be a first lien on the crops grown on the land, subject only to appellee's lien for the rent, one-third of the corn, and one-fourth of the cotton.

Woods made the crop which was reduced in amount by excessive rains, and he gathered the corn, of which there were 450 bushels, and he delivered to appellee one-

third thereof as rent. He picked a bale of cotton, which he and appellee carried to Portis' gin. The cotton was sold to Portis and a question arose as to the division of the proceeds of the sale of the bale of cotton. Appellee insisted that he was entitled to the entire net proceeds of the bale of cotton, to apply on his account for the hay, corn and seed which he had sold to Woods. Portis insisted that appellee was entitled to only one-fourth the proceeds of the bale of cotton, and he gave appellee a check for that amount, which was not accepted by appellee in satisfaction of his claim to the entire proceeds of the bale of cotton.

Woods hauled a second bale of cotton to the Portis gin where the issue was renewed. Portis tendered appellee a check for one-fourth the proceeds of the second bale of cotton, with Woods' knowledge and consent, but he offered to pay only one-fourth the proceeds, whereupon appellee attached the crop to enforce his lien for the advances he had made.

It is not questioned that the corn, hay and seed were necessary for Woods to make a crop, and that ordinarily appellee would have had a lien on the crop for the amount and value of these advances, but it is insisted that appellee agreed that the mortgage which Portis took should be a first lien on the crop, subject only to appellee's claim for rent, one-third of the corn, and one-fourth of the cotton.

The lien of the landlord for rent and necessary supplies is, of course, superior to the mortgage on the crop, but the landlord may waive his lien or estop himself from asserting its priority over a crop mortgage. It was said in the case of *Reynolds* v. *Cowan Bros. & Hardin,* 148 Ark. 655, 232 S. W. 941, that if a landlord induces a third person to make advances or furnish supplies to the tenant by expressly or impliedly stating that he will not assert the priority of his lien, he is estopped to assert such priority.

Portis insists that he was thus induced to make the advance to Woods, and the testimony of Woods is corroborative, but appellee denies this testimony.

The cause was transferred to the Chancery Court, without objection, and the Chancellor sustained the attachment and decreed the priority of the landlord's lien over the mortgage, and from that decree is this appeal.

There are conflicts in the testimony which cannot be reconciled. It appears certain that Portis was under the apprehension when he agreed to advance Woods $400, to be secured by a mortgage, that appellee would make no advance and would have no lien except for the rent, but something more is required. It is essential that appellee had agreed that this should be the contract, but appellee had an existing claim for necessary supplies furnished and there was no showing that he agreed to subordinate his lien for these supplies and it is certain that appellee did not agree to waive his lien. It was because of his refusal to do so that Stuckey Bros. declined to make the advance of money, which Portis later made. It does not appear that appellee made any advances after the mortgage was given. The mortgage covered the following property:

1 Bay Horse, age 8 years, weight 1300 lbs., named "Bob";

1 Bay Horse, age 8 years, weight 1300 lbs., named "Brownie";

1 Trailer Wagon—shop model;

1 John Deere Cultivator;

1 McCormick Deering Breaker;

1 John Deere Planter;

All miscellaneous tools and harness;

My interest in crops raised during the crop year 1945 on forty (40) acres of land planted 20 acres of cotton and balance in feed crops and rented from E. E. Pankey, Craighead County, Arkansas, for one-fourth (1/4) of cotton and one-third (1/3) of other crops.

It thus appears that Portis had substantial security, although it may not have been sufficient for his advance

240

apart from the tenant's interest in the crop. When asked what security Woods had to offer, Portis answered, ''Mules, tools, regular line of forty-acre set up.'' He was asked, ''Secured how?'' and he answered, ''First mortgage on mules and tools and equipment.'' Asked, ''Did he tell you it would be a first mortgage?'' Portis answered that appellee heard the conversation with Woods and did not make any objection or correction. Portis further testified that he did not expect appellee to furnish anything except the land, and he was asked, ''Did you expect this to be a first mortgage on all the crops, team and tools,'' and he answered: ''Yes, sir. It was my understanding that Mr. Pankey (appellee) would receive his one-fourth and one-third and that all three-fourths and two-thirds would liquidate the loan.'' But as has been said something more than his understanding was required. An agreement to that effect was essential.

We cannot say that the preponderance of the evidence shows that an agreement was entered into in accordance with Portis' understanding and the Chancellor did not so find. The decree must therefore be affirmed and it is so ordered.